Opinion after re-hearing..

Judge Underwood
delivered the opinion of the Court.
June 2b,
The 3d section of the act of 1798, subjecting lands to the payment of debts, by sales under-writs of fieri facias, directs that the officer shall make the debt, &c. in the manner hereinafter prescribed, viz: “first of the goods and chattels,exclusive of slaves; and if there be no such goods and chattels, or not sufficient found in his bailiwick, then of the slaves; and if there be none, or not sufficient found in his bailiwick, lastly of the lands, tenements, and hereditaments in possession, reversion or remainder, or so much there *244 of, in one or more entire parcels, as shall be sufficient^ and such part as the owner shall direct, if he thinks proper.” The seventh section of the same act de--clares, that “Land shall'not be taken by execution’, for debt or damages, if theFe be slaves or personal property sufficient to pay the debt or damages, unless the defendant should request, that his land should be taken instead of the other property.” These sections are susceptible of two interpretations, only, applicable to the facts of the present case, '[’he first, and that on which Banton relies, is, that when goods a.nd chattels, slaves and land, are mentioned in the act, as a fund out of which debts may be made by execution, the legislature intended to include the entire estates, real and personal, of all the defendants in the execution, and to have the land of no one sold, if goods and chattels, or slaves of any other could be found in the bailiwick, sufficient to make the debt. The other interpretation, and that which Faris contends foe, is, that the act only intended to protect land, in preference to slaves, and slaves in preference to goods and chattels, where each of these species of property was found to belong to the same individual who might -be a defendant with others in the execution. My mind adopts the last construction, and in addition to the reasons already assigned in the opinion delivered, I think the word owner, as used in the third' section, and the word defendant, as used in the seventh section, cleat ly indicate, that it was only designed by the- legislature, to prescribe rules by which the land owned by a defendant was to be protected in preference to the slaves- or goods and chattels of the same defendant, and not in preference to the slaves or goods and chattels of other defendants. Suppose A and B are execution defendants; A hasnothkig but land andBnothing but slaves, ff A owned all the property, and B none, then A under the statute, has an option, to surrender the land, and protect his slaves. Now, why may not B insist, with as much propriety, upon the exercise of the same option, to protect his slaves, by surrendering A’s land? The seventh section shews conclusively, that it is the individual owner of slaves alone who can protect them by surrendering his own land, and as this rule is confined to the same defendant who owns land and slaves both, I cannot believe the legislature ever intended to *245 have the alavés of one defendant sold, in preference to the land of another defendant, who has nothing but land. It is clear to me, that all the rules prescribed, were intended to apply to the same person as a dant, and that it never was designed to make that defendant who held nothing but personal estate pay all the debt, in order to save the' land of a co-defendant who had no other pioperty. A single case will shew the absurdity of such a construction as will save lands by selling the personalty in the maimer contended for by Banton. A is the principal debtor in a replevin bond, and B his surety. A has nothing but land, and B nothing but slaves. B’s slaves are sold according to-the construction contended for. He then, by mo.tion, obtains judgment against his principal A, whose land then has to go under the hammer in order to pay B. What good can result from a construction of the statute,'which will lead to such consequences? None. On the contrary, much evil. A’s house, which counsel so urgently plead for, is at last sold, and that too, after B’s slaves may have been sacrificed; and by the delay, if A acts fraudulently, B may be unable to procure an indemnity for his losses.
Kincaid and Crittenden, for plaintiffs; Owsley, An dersan, Mills and Brown, for defendants.
The more I have examined the case, the more reasons fíave I found for adhering to the opinion.
Note — Chief Justice Roix-rtson did-not sit in this case.